Jeffrey Jones for the appellant, Jose Cruz. Would the court like me to briefly summarize the case for the benefit of the audience? Yes, be nice. I will. I'll be glad to. This is an appeal of a habeas corpus case. My client was convicted by a California court for robbery, and he filed a habeas corpus petition in the federal district court, and he's appealing to denial of that petition. Before this court, he was not challenging his robbery conviction, but he received an enhancement for the crime being gang-related. And the enhancement required that he was committed to robbery in association with the criminal street gang. Keep your voice up. And that he did so with the specific intent to assist the criminal activity of that street gang. And the street gang was called MS-13. And there was another individual involved in the robbery who the evidence did show was a member of that street gang. And this gets me to the point of the case, which is that there wasn't a reasonable inference from the evidence that my client, that Mr. Cruz, was a member of that gang, that he was actively participating in that gang. Now, his active participation or membership in the gang isn't a requirement of the statute, but it is a necessary premise for the reasoning by the California court of appeal and for the jury's verdict. And I do not – his position is there was not sufficient evidence at trial to show that he was active. Well, there was some evidence. There was the expert's testimony. I believe – Now, question – I mean, we're not here to question whether or not the guy's really an expert, but –  Well, there was – There was – he was allowed to testify. Indeed. About the gang, its history and its involvement, the area. Absolutely. And he made some observations about the other fellow, about his prior dealings with the other fellow, but that was all in the context of his expert testimony. Yes, indeed. Indeed. And then he made some observations about the petitioner's physical characteristics, what were his arms, the tattoos on his arms and whatnot. Yes. And then he really – what really I think the court of appeal said was the association with a gang member. Yes. Now, why – there is evidence of that. So why – we're into the land of double dip or double deference, whatever you want to call it, because we have the Jackson standard and then we have to tack on the AEDPA standard. Absolutely. Right. So you really got a tough argument. If I can explain. The expert from the California court of appeals reasoning and the expert's reasoning assume they both proceed from the premise that my – that Mr. Cruz is a member of that street gang, that he's actively involved in it. If he's not – and bear with me for a second. If he's not involved in that gang since he came from El Salvador a decade before the crime, then the inference fails. The reasoning of the court of appeals, for instance, and I think this applies to the expert too, is that, well, they're both gang members. They did a robbery together. It's in a gang area, et cetera, the evidence you were referring to. And because they're both actively involved in it. And then the other chap handed your client the pistol. Yes. I think the evidence shows that they did the robbery together. I don't think that's – I don't think there's any – given the deference, we owe the jury's verdict. And there's a reasonable inference they did the robbery together. I think there's a reasonable inference that they were acquaintances. I don't think – the California court of appeal noted that, well, they didn't meet – they weren't strangers who just met in a bar and decided to do a robbery together. That's reasonable. I take no issue with that. That doesn't mean that he was a member of the gang. And your client, was the argument there that he was initiated into this gang when he was 8 years old? That was the testimony of his sister. Yeah. I mean, how clear was that tattoo? It was a – it was described – I haven't seen the exhibits. They weren't part of the record. But it was described as a crude tattoo. But it definitely – It was described as what? It was described as a crude tattoo. In other words, not, you know, not the kind you get in a parlor, but that it was kind of homemade. Yeah. Homemade type of tattoo. But I think it was – the evidence – I think the evidence is clear that it was legible and that it indicated his membership in this street gang. Now, and Judge Pius referred to his tattoos, which were in the record. The MS – Right. And the expert relied on those. Now, the sister testified, Anna testified, that he – not only that he was inducted into the gang, MS-13, in El Salvador when he was 8 years old, but also that he received the tattoos there, that when he came to the United States in 1998, he didn't have those tattoos. Now, the jury wasn't required to accept her evidence. But I mention her – I mention her testimony because the prosecution accepted it and the court of appeals accepted it. The prosecution, during its closing argument, the prosecutor, relies on him having been inducted into the street gang at 8 years old to show his dedication to the gang, to show his commitment. Now, I would – I would argue that being inducted into a street gang at 8 years old shows victimization and not dedication. But that was the argument – that was the argument the prosecutor relied on to secure the true findings as to the gang enhancement. So I think we need to accept her testimony. I'm sorry. As the case comes to us, we have somebody with gang tattoos conducting a robbery in association with somebody who's an admitted member of a gang, a sister saying that the defendant was initiated into a gang at a young age, this same gang at a young age, and an expert who says – some evidence of coordination between the two, and an expert who says that the gang controls these sort of activities in this area. Given double deference, how can you get past that? Well, first of all, I think – I believe, Your Honor, everything you said is correct regarding – regarding the facts. Those are all true facts here. I think – the reason I think that this Court can get past it and should do so is because this doesn't show that he's currently involved in the gang. And a rational juror, I think, without him being – without any showing that he was involved in the gang at any time in Los Angeles, and a critical piece of evidence was – came from the gang – from the gang expert, Morales, and he testified at some length regarding how they monitor the street gang. They've – they have three officers dedicated to monitor – it's a gang unit – three officers dedicated to monitoring MS-13. They've done so for years. They've – they have 900 people they believe are gang members. Not only that, they follow their friends, their family, their girlfriends, their mothers, their fathers. Those are his words. They have an extensive searchable database that they create doing this. And through all of that, they'd never heard of Mr. Cruz. He doesn't appear in that database once, which I think leads to an irrefutable inference that he wasn't involved in that gang since his time in El Salvador. That, in turn, I think makes it impossible for a rational jury – a rational juror to find beyond a reasonable doubt that he had to have known that Mr. Perez was a member of that gang. I think there is a reasonable doubt there, even under the double deference. And I think that's the – I think that's the faulty premise. So what was he doing with the other guy? And what was he – who then handed him the gun? They were committing a robbery together, there's no question. What? You know, they both had the tattoos. They both had MS-13 tattoos and they committed a robbery in concert. That's – I don't contest that. But the statute requires, as interpreted by the California Court of Appeal, the statute requires that Mr. Cruz knew that Mr. Perez, his co-defendant, was a gang member. Listen. The tattoos weren't visible. They had the tattoos entirely covered up, so they weren't tattoos that you could see when they were wearing street clothes. You don't have to have them with a neon sign, you know. Well, there was no – there were no indications of gang – of neither man made any – the witnesses had no idea that they were in a gang. There was no indication of gang relationship at all. Do you want to save a minute and a half? Yes, I would like to. Okay. Okay. Good morning, and may it please the Court. David Glassman for the appellate. I don't think it's necessary to view this case as saved by the extremely restrictive standards of review that the AEDPA provides, which have already been addressed in this Court. I think the point of this case is that it's a much more simple case than that. It boils down to a much more elementary case than that, to use Judge Pragerson's example in the previous case. So what we have in this case conceitedly, without any dispute by anyone, is we have two individuals who are clearly acting in concert. That can't be disputed. And they are committing a planned robbery. That is obvious. And we know that one of them, Perez, is a member of the gang, and that is not disputed. And we know that the we also know, and this is via the police officer, we also know this is an area controlled by the MS-13 gang, and the MS-13 gang frowns upon outsiders committing crimes, significant crimes, in their territory. And with that backdrop, we are told that a non-gang member will turn to a known gang member when they are jointly committing a robbery and demand that he produce the weapon, that the other person will brandish and point at the victims for the purpose of committing the robbery. And lo and behold, we know that that person, who has concealed gang affiliation, is in fact identified with that gang. So the question is, well, before we get to deference, much less double deference, simply what is a reasonable inference from facts? And I would submit that in this case, the only reasonable inference is the two gang members are acting in concert. It is only by virtue of speculation and unreasonable inferences that we go on the other direction in the first place. Well, you lost one judge in the California Court of Appeal on this, so it can't be the only reasonable inference. Well, Your Honor, in fact, if we look... I'm willing to defer, but at least one judge in the California Court of Appeal thought it wasn't enough. That's correct. But if we look further, then, at how the State Court resolved the case, we also see that as to the other charge that was appealed, the Court of Appeal unanimously found the evidence insufficient to uphold the gang enhancement. And I'm not at all suggesting the Court of Appeal wasn't reasonable in its disposition of the case. I was just questioning your statement that the only thing any rational person could do on this case was reach a single conclusion, because I assume that the dissenting judge was rational, even if you think mistaken. Oh, I'm confident that he was rational, even if he was wrong. Okay. But my point, again, and there are plenty of cases behind me, is that certainly with the enhanced standard review that applies at this point, the contrary conclusion of the majority was a reasonable one. Just a couple of notes. One other note about the case. There is a reference in the Petitioner's Briefs to the role of intoxication. That's not really explained. And I would point out that the defense in this case was not intoxication. So I'm not exactly sure what that's doing there, but I didn't know if the Court noted it as well. Otherwise, I'm happy to answer questions. I'm just kind of curious. Is this kind of gang expert testimony, is that common in the superior courts? I think that it's fair to say that. It's not very satisfying. Would you elaborate, Your Honor? Well, I mean, it just presents false speculation and innuendo and everything else. I mean, it's not like classic expert testimony. Well, and as the Court, I'm sure, is viewed with his own personal knowledge as well, in relating hearsay stuff and everything. It's kind of just weird. I think this is really kind of odd. Well, I think there are two answers to that. One is the facts of this case, and one is the larger question that you raise. On the facts of this case, beyond the role of the trial judge in determining, based on the precedent in California or from this Court or elsewhere, what's permissible, beyond the role of the trial judge, this case illustrates how an appellate court acts in state court as a regulator of this testimony, because the appellate court here had no difficulty with respect to the resisting charge in concluding that the expert's testimony was unfounded, was speculative, was unreasonable. So my point is that you don't have the lockstep endorsement of the gang expert routinely in state court, and this case illustrates that. The other point that I would make, and, again, reasonable minds may differ on the parameters of this, but certainly there are many aspects of the intricacies of gangs that, in the view of some judges at least, is sufficiently beyond the experience of laypeople that experts are to evaluate it. The jury is told in jury instructions that are not disputed here, nor is the role of an expert generally raised in this case, that it is ultimately the jury's job, obviously, in resolving that or any other fact, to consider the reasonableness of the expert's testimony. So, but the answer to your question is. I left the state courts before all that gang enhancement stuff. I'm sorry? I left the state courts before all the gang enhancement. Yeah. Yeah. I'm sure you had. Are there really 900 members of this gang in Hollywood? Well, so that's an interesting point, Your Honor, because. That's a reinforced battalion. Well, I don't have any reason to doubt it, but what's interesting to me about that observation is. You have no reason to doubt it? I have no personal knowledge that was. And this tells me that police aren't doing their job. No. Well, or that there's a big job to do, but the point I would make in response, Your Honor, is what I think is interesting in this case is the complaint is made here, right, that one of the reasons that the finding is unreasonable is that this officer doesn't know previously that Cruz is affiliated with the gang. Well, so what I'm saying is you can't have it both ways, right? You can't argue that they paint with such a broad brush. Well, let me. They identify everybody as gang related. Let me ask you this. Yes. The court came into the Federal ‑‑ this case got to the Federal courts. Their state remedies were exhausted. We did not contest exhaustion. I'm just asking that. Yes. And so it went to the court of appeals. Correct. And what was the court of appeals decision? Well, as Judge Hurwitz indicated ‑‑ Just tell me what it was. Court of appeals affirmed. How did they affirm? It found that under the Jackson v. Virginia statute ‑‑ What did they do? What did the piece of paper look like? A postcard? No, Your Honor. It was a written reasoned decision that was quoted at length by the district court in the Federal court. Uh-huh. And it's in the ‑‑ And it went to the Supreme Court. Correct. And review was denied. I guess with a one-liner. Correct. Okay. Correct. That's all. Thank you, Your Honor. Okay. Just briefly. Yeah. I do, in fact, contest a couple of things that my colleagues said were uncontested. Planned, I think, is a bit of a stretch, but I ‑‑ but it's admitted that they did it together. They did the robbery together, no question. Okay. Try to keep your voice up. Yes, sir. Regarding the area ‑‑ this area being controlled by MS ‑‑ the gang MS13, they don't allow crimes in their territory. The expert testified they discouraged crimes in their territory. Now, the expert's problem ‑‑ expert's testimony had a lot of problems. He ‑‑ according to him, they own half ‑‑ they own half of Hollywood. And he said they didn't ‑‑ he said they tried to discourage crimes in that area, but he also admitted on cross-examination that plenty of ‑‑ that a number of the robberies that are not ‑‑ robberies not involving MS13 are prevalent in Hollywood. There are such robberies. So it's not like every robbery in that half of Hollywood has to be an MS13 robbery, not by any means. An expert's testimony is only, under California law, it's ‑‑ it only has any evidentiary value to the extent that it's supported by the evidence. It's based on conjecture and supposition. Well, a jury can believe it if they want. I mean, it wasn't excluded or anything. True. They can give as much weight as they want. And here apparently they gave quite a bit of weight. Well, we don't know what they gave. We don't know that they gave everything he said weight. They clearly found the verdict was true. I'd say to the extent the expert says something, though, that is based on conjecture and is not supported by the evidence, it doesn't need to be considered as an inference under Jackson v. Virginia under any standard of review if it's not valid evidence. That analysis depends on valid evidence. My last point, the demanding the gun. The expert said that was a big part of his testimony, that Mr. Cruz demanded the gun. Give me the shit were the words. And Perez handed him a gun. Now, that's an example of the expert's opinion being based on nothing. The testimony by the victim was he the statement was made in Spanish is my point. Mr. Cruz said that in Spanish. The victim the victim testified in English regarding this is what was said. Now, the victim never said it was a command. He didn't say orders were given. He simply gave the quote of give give me the shit was the quote. Only the expert interpret the expert and the prosecutor are the only ones that interpreted that as a command. It's susceptible to other other interpretations. The California Court of Appeal, importantly, did not interpret it as a command. They called it a request and they did not rely on that at all. And I think that's another example of the expert's opinion not being not being worth anything because the evidence it relied on was wasn't substantial. All right. Thank you. Thank you. This matter is submitted.
judges: Pregerson, Paez, Hurwitz